

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FRIEDE & GOLDMAN, LTD. | * | CIVIL ACTION |
| VERSUS | * | NO. 99-1970 |
| GOTAVERKEN ARENDAL CONSULTANTS, AB, ET AL. | * | SECTION "N" |

## ORDER AND REASONS

Before the Court is defendant Gotaverken Arendal Consultants, AB's Motion to Dismiss Pursuant to Rule 12 or Alternatively Motion to Transfer. For the following reasons, defendant's Motion is DENIED.

### BACKGROUND

This suit arises out of a dispute over a patent for a semi-submersible vessel. Defendant GVA Consultants, AB ("GVA-C"), a Swedish corporation, is the owner by assignment[1] of United

---

[1] Throughout its briefs, plaintiff contests that GVA-C is the owner by assignment of the patent in question. In support of its argument, plaintiff offered a copy of an assignment dated September 22, 1981, in which the inventor of the semi-submersible vessel, Hadar Liden, assigned his entire right, title and interest in the invention to Gotaverken Arendal AB. After reviewing the copy of an Asset Sale Agreement dated March 6, 1990, submitted by GVA-C, the Court is convinced, however, that defendant GVA-C is the owner by assignment of the '050 assignment. The Asset Sale Agreement establishes that effective January 1, 1990, Gotaverken Arendal AB sold all patents and patent applications to GVA-C.
DATE OF ENTRY
MAR 1 6 2000



States Patent No. 4,436,050 (the "'050 patent"), issued on March 13, 1984. Plaintiff Friede & Goldman, Ltd. ("F&G") is the designer of the Millennium, described by plaintiff as "a semi-submersible drilling unit that floats on two hulls and is stabilized by four columns."[2] In June, 1998, GVA-C sent a letter to plaintiff initiating discussions on the implications of its patent on plaintiff's Millennium design. Following several letters and meetings in which the parties discussed their respective positions on the '050 patent, on June 25, 1999, plaintiff filed suit against defendant Gotaverken Arendal Consultants, AB, seeking a declaratory judgment that the '050 patent is invalid, unenforceable, and not infringed. Several months later, plaintiff sent a copy of the complaint via mail to defendant in Sweden in an effort to serve the summons and complaint under Article 10(a) of the Hague Convention. On October 28, 1999, plaintiff filed an amended complaint, adding Gotaverken Arendal, AB as a defendant. Plaintiff filed a second amended complaint on February 15, 2000, adding GVA-C as a defendant.

On October 29, 1999, GVA-C filed a suit for patent infringement against plaintiff in the United States District Court for the Southern District of Texas. The presiding judge transferred GVA-C's case to this district on January 21, 2000. Defendant now moves this Court to dismiss plaintiff's complaint for declaratory relief, or in the alternative, to transfer the case to another district.[3]

---

[2]Plaintiff states that it began design of the Millennium on or about February, 1997.

[3]The Court notes that defendant's motion to transfer was filed prior to the transfer of GVA-C's case to this district. See Section IV (below).

2

## STANDARD OF REVIEW

In determining whether the Court should grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." Capital Parks, Inc. v. Southeastern Adver. & Sales Sys., Inc., 10 F.3d 627, 629 (5th Cir. 1994). Such dismissal is justified "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." Id. (citation omitted).

## LAW AND ANALYSIS

Defendant moves this Court to dismiss plaintiff's complaint for declaratory relief on three grounds: (1) plaintiff sued a non-existent entity, "Gotaverken Arendal Consultants, AB"; (2) plaintiff failed to serve named defendant in the manner required by the Hague Convention; and (3) plaintiff filed the complaint for declaratory relief at a time when there was no actual case or controversy. In the alternative, defendant argues that this case should be transferred to the United States District Court for the Southern District of Texas, in which a related case was pending and the proper parties had appeared.

I. <u>Whether plaintiff sued an existing legal entity</u>

At the time defendant Gotaverken Arendal Consultants, AB filed its Motion to Dismiss, it was the only named defendant in the instant dispute. GVA-C, in the shoes of Gotaverken Arendal Consultants, AB, claims that no such entity exists. Even if this is the case, the Court finds that the issue is now moot. While not listed in the caption, a second entity, Gotaverken Arendal, AB, was mentioned in the original complaint. The record indicates that before the pending Motion to Dismiss was filed, plaintiff amended its complaint to name Gotaverken

3

Arendal, AB as a defendant. Even further, after the filing of the Motion to Dismiss, plaintiff moved this Court for leave to amend its complaint a second time. After hearing argument on plaintiff's motion, a United States Magistrate Judge granted plaintiff leave to amend its complaint again, adding GVA-C as a defendant. This cured the defect alleged by defendant. Thus, the issue of whether plaintiff sued an existing legal entity is now moot, as the proper parties are currently before the Court. To the extent defendant's Motion to Dismiss relies on the argument that plaintiff sued a non-existent entity, its Motion is denied as moot.

II.  <u>Whether plaintiff served defendant in the proper manner under the Hague Convention</u>

The Federal Rules of Civil Procedure allow service upon a foreign corporation "by any intentionally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention")." Fed. R. Civ. P. 4(f)(1). Here, the parties do not dispute that the Hague Convention governs service of process because both the United States and Sweden are signatories to the treaty. The Hague Convention sets forth procedures for effecting service of process. <u>See e.g.</u>, Hague Convention, arts. 2-7 (permitting service of process through Central Authority), 8-9 (permitting service of process through diplomatic or consular agents). The purpose of the Hague Convention is "to create appropriate means to ensure that judicial and extrajudicial documents [be] served abroad [and] shall be brought to the notice of the addressee in sufficient time [and] to improve the organization of mutual judicial assistance for that purpose by simplifying and expediting the procedure." Hague Convention, preamble.

One method of transmitting documents is described in Article 10(a), which states: "[p]rovided the State of destination does not object, the present Convention shall not interfere

4

with--(a) the freedom to send judicial documents, by postal channels, directly to persons abroad . . . ." Hague Convention, art. 10(a). The circuits are split as to whether Article 10(a) permits service of process via mail on a non-resident, foreign defendant. The conflict turns on whether Article 10(a)'s use of the term "send," encompasses "service." See Beverly Jackson, Annotation, Service of Process By Mail in International Civil Action as Permissible Under Hague Convention, 112 A.L.R. Fed. 241 (1993) (discussing cases that have considered this issue). Courts holding that Article 10(a) is meant to apply to service of process conclude that use of the word "send" instead of "service" can be attributed to careless drafting. See Ackermann v. Levine, 788 F.2d 830 (2d Cir. 1986); see also Koehler v. Dodwell, 152 F.3d 304 (4th Cir. 1998) (stating that the liberal service options provided in the treaty include service by mail); Coblentz GMC/Freightliner, Inc. v. General Motors Corp., 724 F. Supp. 1364 (M.D. Ala. 1989), aff'd, 932 F.2d 977 (11th Cir. 1991). Further, these courts reason that a determination that the term "send" does not include "service" is not in accord with the broad purpose of the Hague Convention as a whole. Plaintiff adopts this argument. Plaintiff asserts that there is no question that F&G served a copy of the summons and complaint on defendants by forwarding copies to defendants' office in Goteborg, Sweden, via registered mail, return receipt requested.

In contrast, other courts hold that service of process under the Hague Convention is controlled strictly by Article 5. See e.g., Bankston v. Toyota Motor Corp., 889 F.2d 172 (8th Cir. 1989). Such courts argue that use of the term "service" appears in subparagraphs (b) and (c) of Article 10. Therefore, they accept the argument that if the drafters meant the term "send" to include "service," they would have used the term "service" in Article 10(a). Under this line of authority, service of process must be effected under Article 5 of the Hague Convention. In other

5

words, service of process under Article 10(a) is deemed insufficient or defective. Defendant adopts this argument.

The Fifth Circuit has yet to rule on this issue. District Courts within this Circuit continue to disagree. Compare Bayoil Supply & Trading of Bahamas v. Jorgen Jahre Shipping AS, 54 F. Supp. 2d 691 (S.D. Tex. 1999) (concluding the Hague Convention, pursuant to Article 10(a), permits service of process by direct or registered mail); Ortega Dominguez v. Pyrgia Shipping Corp., 1998 WL 204798 (E.D. La. Apr. 24, 1998) (same); Hutchins v. Beneteau (USA) Ltd., 1990 WL 17533 (E.D. La. Feb. 15, 1990) (same); Smith v. Dainichi Kinzoku Kogyo Co., 680 F. Supp. 847 (W.D. Tex. 1988) (same), with Greene v. LeDorze, 1998 WL 158632 (N.D. Tex. Mar. 24, 1998) (concluding Article 10(a) does not permit service of process by direct or registered mail); Postal v. Princess Cruises, Inc., 163 F.R.D. 497 (N.D. Tex. 1995) (same); Pennebaker v. Kawasaki Motors Corp., 155 F.R.D. 153 (S.D. Miss. 1994) (same); Hunter Douglas Metals, Inc. v. New Bay Fin. Shipping Co., 1988 WL 115234 (E.D. La. Oct. 28, 1988) (same); Pochop v. Toyota Motor Co., 111 F.R.D. 464 (S.D. Miss. 1986) (same).

Other courts reason that where the receiving country ratified the Hague Convention without express prohibition of service by mail, service by mail pursuant to Article 10(a) is proper.[4] This

---

[4]See.g., Ackermann, 788 F.2d 830; G.A. Modefine, S.A. v. Burlington Coat Factory Warehouse Corp., 164 F.R.D. 24 (S.D.N.Y. 1995); Curcuruto v. Chelshire, 864 F. Supp. 1410 (S.D. Ga. 1994); Melia v. Les Grandes Chais de France, 135 F.R.D. 28 (D.R.I. 1991); Hammond v. Honda Motor Co., 128 F.R.D. 638 (D. S.C. 1989); Montgomery, Zukerman, Davis, Inc. v. Diepenbrock, 698 F. Supp. 1453 (S.D. Ind. 1988); Turick v. Yamaha Motor Corp., U.S.A., 121 F.R.D. 32 (S.D.N.Y. 1988); Newport Components, Inc. v. NEC Home Electronics (U.S.A.), Inc., 671 F. Supp. 1525 (C.D. Cal. 1987); Lemme v. Wine of Japan Import, Inc., 631 F. Supp. 456 (E.D.N.Y. 1986); Zisman v. Sieger, 106 F.R.D. 194 (N.D. Ill. 1985); Weight v. Kawasaki Heavy Indus., Ltd., 597 F. Supp. 1082 (E.D. Va. 1984).

line of reasoning is based on Article 21, which provides an opt out procedure for signatories to the Hague Convention, stating: "[e]ach contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the following . . . opposition to the use of methods of transmission pursuant to articles 8 and 10 . . . ." Id. Plaintiff submits that Sweden has not objected to service of process via mail, and thus service by mail is not an invalid method of transmission under the treaty. See Annex to the Convention at n.27. At least three courts agree with this contention. See Borschow Hosp. & Med. Supplies, Inc. v. Burdick-Siemens Corp., 143 F.R.D. 472 (P.R. 1992); Coblentz, 724 F. Supp. 1364, aff'd, 932 F.2d 977.

After considering the reasoning of courts on both sides of the issue, this Court adopts the reasoning of those courts that conclude that the Hague Convention permits service of process by mail pursuant to Article 10(a). The Court finds that this conclusion sounds in agreement with the broad spirit and overall purpose of the Convention--to create appropriate means of serving abroad judicial and extrajudicial documents. It is undisputed that a copy of the summons and complaint reached GVA-C in Sweden. The Court finds that to allow the distinction between "send" and"service" to prohibit service of process directly by mail would elevate form over substance. Thus, to the extent that defendant's Motion to Dismiss relies on the argument that plaintiff's service of complaint and summons via mail pursuant to Article 10(a) is deficient under the Hague Convention, its Motion is denied.

III.   Whether there existed an actual controversy at the time plaintiff filed suit

An "actual controversy" must be present for a court to exercise jurisdiction over an action

7

in which the plaintiffs seek a declaratory judgment.[5] See 28 U.S.C. § 2201(a); Fina Research, SA v. Baroid Ltd., 141 F.3d 1479, 1481 (Fed. Cir. 1998).  An "actual controversy" is one where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941); see also Emme Bridal Inc. v. Milady Bridals Inc., 1998 WL 241202 (S.D. Tex. Mar. 17, 1998) (citations and quotations omitted).  To determine whether there is an actual controversy, the Court employs a two-part inquiry:

> First, the defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity.  Second, the plaintiff must actually have either produced the device or have prepared to produce the device.

Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987).  The plaintiff seeking a declaratory judgment bears the burden of proving that an actual controversy exists.  See Fina Research, 141 F.3d at 1481.  Because it is uncontroverted that F&G has taken action sufficient to constitute preparation to produce the alleged infringing device, the pivotal issue before the Court is whether GVA-C made an express charge of infringement or whether the totality of the circumstances created a reasonable apprehension on F&G's part of a suit for patent infringement.  See EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1996); Arrowhead

---

[5] 28 U.S.C. § 2201 provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  Id.
The "actual controversy" requirement serves to prohibit courts from the assumption of jurisdiction where plaintiffs seek advisory opinions.  See Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987).

Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988).

Defendant argues that there was no case or controversy at the time plaintiff filed suit. First, defendant contends that there was no express charge of infringement made by GVA-C. GVA-C further contends that the letters offered by plaintiff are not sufficient objective evidence that its apprehension of being sued was reasonable. In the absence of an express charge of infringement, GVA-C argues that the totality of the circumstances demonstrate that plaintiff had no objective basis for a reasonable apprehension that it would be sued. Defendant points out that the letters express a desire to avoid enforcement of the patent through litigation. Defendant also points to plaintiff's letter of April 29, 1999, claiming that it reveals an intent to discuss defendant's offer to provide cooperation, compensation, and/or subcontracting. After meeting to discuss these very issues, defendant submits, plaintiff sent another letter to GVA-C on June 25, 1999, which states: "We assume that this matter [the '050 patent] is now a non-issue from GVA's position. Our company's final position is that Friede and Goldman, Ltd. does not violate any of GVA's rights," and further suggests that the parties may cooperate on future projects. In sum, defendant suggests that the parties were involved in a business relationship "without the threat, direct or otherwise, of litigation." In the alternative, GVA-C contends that even if plaintiff had a reasonable apprehension of being sued at the time it filed suit, GVA-C's July 2, 1999 letter removed any such reasonable apprehension.[6]

---

[6]This letter stated: "Please be informed that due to a reorganisation [sic] and change of managing director there has not been an opportunity to deal with subject matter in a proper way since last occasion. However, when the current situation has settled we will revert in due course in order to reach a final agreement." The Court notes that this letter was sent by GVA-C after the instant suit was filed.

9

In response, plaintiff addresses whether GVA-C made an express charge of infringement. Plaintiff claims that before this action was filed, in March, 1999, GVA-C's managing director met with plaintiff's president and explained how each element of claim one of the '050 patent was found in plaintiff's Millennium design. Plaintiff relies on <u>Athletic Alternatives, Inc. v. Prince Mfg., Inc.</u> 73 F.3d 1573 (Fed. Cir. 1996) for the proposition that infringement exists if the accused device contains all elements of the claimed patent. Thus, plaintiff concludes, GVA-C's comments constitute an express charge of infringement. Further, plaintiff maintains that GVA-C never retracted its express charge of infringement. Plaintiff also relies on its grant of indemnification of Schahin Petroleum, with whom plaintiff contracted to build the Millennium, to establish that an actual controversy existed at the time of filing the complaint. <u>See Arrowhead</u>, 846 F.2d at 737.

In the alternative, plaintiff asserts that the totality of the circumstances created a reasonable apprehension that plaintiff would be sued. F&G points out that it received no communication from GVA-C during the period between April 26 and September 27, 1999, leading to the assumption that GVA-C had decided to pursue its claims of patent infringement against F&G. F&G argues that the background facts of the relationship between the parties, including GVA-C's initiation of discussions on the '050 patent, and licensing propositions, were sufficient to create reasonable apprehension on its part that it would be sued. <u>See Goodyear</u>, 824 F.2d 953. Plaintiff also points out that two letters on which GVA-C bases its argument that there was no reasonable apprehension of suit were, in fact, mailed subsequent to the filing of plaintiff's suit. It is well-established that the existence of an actual controversy must be determined at the time a complaint for declaratory relief is filed. <u>See Arrowhead</u>, 846 F.2d at 734 n.2.

10

In reply, defendant argues that F&G's letter of June 25, 1999, indicating that plaintiff thought the issue of the '050 patent was a "non-issue," was sent on the very day plaintiff filed suit, and that this letter is "better" objective evidence of F&G's subjective state of mind. Defendant also asserts that while the evidence indicates that plaintiff agreed to indemnify Schahin, plaintiff failed to allege that GVA-C threatened Schahin with enforcement of the '050 patent. Defendant emphasizes that F&G's knowledge of the departure of GVA-C's managing director was gained before the suit was filed, and that this departure alone could reasonably explain the lack of communication between the parties during the months of May and June, 1999. Finally, defendant argues that there was no express charge of infringement during the March, 1999 meeting because the discussion of elements of claim one of the '050 patent was simply a part of the licensing negotiations, which by themselves, are insufficient to create an actual controversy. Under the totality of the circumstances, GVA-C claims it was clear that the defendant was interested in promptly resolving the matter with F&G without undo expense to either party.

The Court finds that the letters exchanged between the parties manifested an "ample-enough threat," such that the totality of the circumstances created a reasonable apprehension on F&G's part that it would be sued. Fina Research, 141 F.3d at 1483. The defendant's activity did not consist of a single letter, nor a single offer to discuss licensing negotiations. Defendant initiated discussions surrounding its patent, informing F&G of the potential for suit through innuendoes that could have led to a reasonable apprehension on F&G's part that an infringement action might be filed. Any desire to avoid enforcement of the patent through litigation "cannot be obviated by a polite and decorous exchange of letters." Goodyear, 824 F.2d at 956. After not hearing from GVA-C for nearly two months, plaintiff could have maintained a real and

11

reasonable apprehension that GVA-C would bring suit against F&G for the Millennium design, as GVA-C offered nothing to suggest that it had abandoned its posture of patent protection. The factual background of the case leads the Court to conclude that it was reasonable for plaintiff to believe that GVA-C would, at some time, bring a suit for patent infringement. GVA-C clearly communicated its intent to protect its patent, and under the law, F&G is not required to wait for GVA-C to decide where and when to sue. See EMC, 89 F.3d at 811. Because the Court finds that the totality of the circumstances created a reasonable apprehension on F&G's part, it does not find the issue of whether defendant made an express charge of infringement to be dispositive of the issue at hand. Thus, having determined that actual controversy was present at the time plaintiff filed suit, the Court denies defendant's Motion to Dismiss on this ground.

IV. <u>Whether the case should be transferred to the United States District Court for the Southern District of Texas</u>

On October 29, 1999, GVA-C filed an action against plaintiff in the United States District Court for the Southern District of Texas, alleging infringement of defendant's '050 patent. Defendant suggests this Court should transfer this case to the Southern District of Texas pursuant to 28 U.S.C. § 1412.[7] On January 21, 2000, however, this Court received notice from the Southern District of Texas that GVA-C's suit was to be transferred here. In fact, on February 1, 2000, GVA-C's suit, Civil Action No. 00-209, was consolidated with the instant case. In light of these recent events, GVA-C's Motion to Transfer is denied as moot.

---

[7] As plaintiff correctly notes, Section 1412 applies to bankruptcy proceedings. The Court assumes that defendant intended to request transfer pursuant to 28 U.S.C. 1404(a).

12

Accordingly,

IT IS ORDERED that defendant's Motion to Dismiss, or Alternatively Motion to Transfer, is hereby DENIED.

New Orleans, Louisiana, this 15 day of March, 2000.

                                      EDITH BROWN CLEMENT
                                      UNITED STATES DISTRICT JUDGE